## DAMAGE TO PROPERTY FROM ESCAPE OF CONTENTS OF A VAULT.

Superior Court of Cincinnati.

RUHAMA D. MURRAY V. ELIZABETH H. BUCKNER, EXECUTRIX OF THE ESTATE OF WILLIAM T. BUCKNER, DECEASED.

Decided, December, 1913.

*Nuisance—Damage to Property and Loss of Use Thereof from Escape of Contents of Vault—Right of Action Abates on Death of the Owner.*

1. An action by a property owner against the owner of adjoining property, for damages to real property and for loss of use of property, arising out of the overflow and seepage of filth from a vault or privy maintained upon the latter's premises, is an action for damages for a nuisance and not an action for damages for trespass.
2. Such an action falls within the provisions of Section 11397 of the General Code, and abates by the death of the owner upon whose premises the vault was maintained and during whose lifetime the damage complained of were suffered.
3. A cause of action for a nuisance existing against the owner of real property, abates upon his death, the same as if an action thereon was pending at the time of his death, and such cause of action can not be asserted in an action brought after his death against his estate.

*Howard L. Bevis,* for plaintiff.
*Waite & Schindel,* contra.

SUTPHIN, J.

This is an action for damages to real property and for loss of use of property. Plaintiff is the owner of a lot and brick building at No. 534 Clinton street, Cincinnati, and the defendant is the owner of property immediately adjoining on the west upon which is a brick building and in the rear of which is a closet built over a vault in close proximity to the dividing line between the two properties. The petition charged that the closet and vault were used by tenants who occupied the defendant's building, and that for a period of four years past de-

fendant maintained this vault in such a defective condition that water therefrom had been allowed to escape and flow over onto the plaintiff's property, and also to percolate through the soil onto the plaintiff's property so as to cause a settling of the soil with the consequent cracking of the foundation and walls of the rear part of plaintiff's house; that this water had even seeped through the foundation walls of plaintiff's building in such quantity as to cover the floor of the cellar to a depth varying from two to twelve inches, thereby greatly inconveniencing the plaintiff in the use of same and furthermore by reason of the foul character of the water greatly interfering with her use of the rear end of her premises.

The original petition in the case was filed November 13, 1912, and an amended petition later on in May, 1913. To this amended petition the defendant filed an answer which consisted of a general denial.

At the opening of the trial counsel for plaintiff and defendant entered into a stipulation by the terms of which it was agreed that the defendant's property was owned by William T. Buckner in his lifetime and up until his death, which occurred April 30, 1912; that William T. Buckner by will devised the property to Elizabeth H. Buckner, the present owner. It was further agreed that the claim sued on was confined to damages suffered during the lifetime of William T. Buckner.

The plaintiff introduced evidence substantially supporting the allegations contained in the petition, and at the conclusion of the plaintiff's case defendant made a motion to arrest the case from the jury and to direct a verdict for the defendant, which was granted and a verdict for defendant was returned.

In support of this motion counsel for defendant contended that this was an action for damage for a nuisance, and as the acts and resulting damage complained of had occurred during the lifetime of William T. Buckner, the owner, his death caused an abatement of the action by virtue of Section 11397 of the General Code. Counsel for plaintiff, on the other hand, contended that this was an action for damages to real property for trespass and as such survived the death of the owner by virtue of Section 11235 of the General Code.

The first question therefore is whether this is an action for damages for a trespass or one for damages for a nuisance. At common law an action for trespass was very clearly distinguished from an action "on the case" for nuisance. Blackstone has said that trespass signifies no more than an entry on another man's ground without a lawful authority and doing some damage however inconsiderable, to his real property. See Vol. 2 Cooley's Blackstone, 2d Ed., 209. This was sometimes described as *trespass quare clausum fregit* or *trespass vi et armis*. The essential idea seems to have been the breaking of a close by force, and so great regard did the law have for a man's premises that it presumed damage would accrue from the breaking into or penetrating such close, even if it was no more than the trampling of the herbage therein. On the other hand, an action, "on the case" was where the injury resulting from the action was not caused by direct force but was consequential. As was stated in the case of *Hicks* v. *Drew*, 117 Cal., 305:

"One of the best tests by which to distinguish trespass is found in the answer to the question: When was the damage done? If the damage does not come directly from the act, but is simply an after result from the act, it is essential consequental, and no trespass."

In this connection Joyce in his work on Nuisance, Section 17, says:

"The distinction between a nuisance and a trespass is that in the former the injury is consequential and results generally from some act committed beyond the limits of the property affected, while in the latter the infringement of the property rights is direct and the injury immediate. The act in the former is wrongful because of the consequent results. It consists in such use of one's own property as to injure some right of another."

This distinction has been recognized as early as 1846 by the Supreme Court of Ohio in *Harrington* v. *Heath*, 15 Ohio, 483, which involved the jurisdiction of a justice of the peace in an action for damages resulting from the erection of a dam across a certain water course causing it to flow back upon the land of plaintiff. If this was an action for trespass the justice of peace

had jurisdiction, whereas if it was an action on the case for nuisance, the justice of peace was without jurisdiction. The court held that such state of facts gave rise to an action for nuisance and not for trespass, and in that connection said:

"The words *trespass* and *case* both, in their ordinary and legal sense, have a different meaning; the word trespass applying to injuries resulting from direct force, and case to such as are conscequential."

This principle is further illustrated in the case of *Williams* v. *Coal Company,* 37 O. S., 583. The plaintiff and defendant were owners of adjoining lands, both engaged in the business of mining coal. The defendant, while excavating coal on his lot mined over onto the plaintiff's lot some thirty-five or forty feet, and then abandoned the mine. Subsequently the plaintiff, in ignorance of the over-working of the defendant, started to mine his own land and struck the working which had been done on his land by the defendant, and the water from the abandoned workings of the defendant flooded the plaintiff's mine, thereby causing him serious damage, and some five years later he brought suit for damages. The plaintiff contended that it was an action for damages for a nuisance, while the defendant claimed that it was an action for trespass and that as it had not been brought within the statutory period of four years it was barred. The Supreme Court sustained the contention of the defendant, and held that it was an action for trespass on the ground that the defendant had made an excavation and aperture in the plaintiff's land. In other words, the damages were directly caused by an overt entry on plaintiff's land. The court, on page 588, expressly distinguishes it from the case where structures have been erected and maintained upon the lands of defendant to the nuisance or injury of plaintiff's premises.

The structure in this case was a closet or vault (commonly known as a privy) located entirely upon defendant's land. The complaint is not addressed to the structure itself, but to the consequences resulting from the condition which defendant permitted to exist with reference thereto. The law is quite clearly

established that if such a structure is permitted to remain in such condition as to annoy others or damage their property, it becomes a nuisance *per se* for which damages may be recovered. *Wood on Nuisances*, 2d Ed., 64:

"Privies are regarded as *prima facie* nuisances, and al¬ though necessary and indispensable in connection with the use of property for the ordinary purposes of habitation, yet if they are built or allowed to remain in such a condition as to annoy others in the proper enjoyment of their property, by reason either of the noisome smells that arise therefrom, or by the escape of filthy matter therefrom upon the premises of another, or so as to corrupt the wall of a well or spring, *they are nuisances in fact* and render the person erecting or using them liable for all the injurious consequences growing therefrom."

To the same effect is the case of *Monroe* v. *Koring*, 12 Ohio Dec., 561, which was a decision by Judge Jackson of this court in 1902 on an application to enjoin defendants from maintaining a vault and for damages. The facts are very similar to those in the case at bar. The condition of the privy vault on the premises of the defendants was such that at certain times it permitted water, filth and other substances to leak and penetrate through and upon the plaintiff's house and premises. The injunction was granted and damage recovered on the theory that this was a nuisance.

The same principle is announced in two certain cases which involved facts almost identical to those in the case at bar. *Finkelstein* v. *Huner*, 77 App. Div., 424 (aff. 79 N. Y., 548); *Iliff* v. *School Directors*, 45 Ill. App., 419.

In this latter case the court said:

"A privy so constructed as to contaminate water of a well used for domestic purposes, or which is allowed to remain in such condition that persons dwelling near it are rendered uncomfortable by the escape of noxious smells and filthy matter is a nuisance *per se.*"

Further cases illustrating the doctrine of private nuisances are: *Davis* v. *Niagara Falls Tower Co.*, 171 N. Y., 336; *Exley*

v. *Southern Cotton Oil Co.*, 151 Fed. Rep., 101; *Alston* v. *Grant,*
3 Ellis & Blackburn's Rep., 128.

The cases above cited are readily distinguishable from an
action in trespass such as is found in the case of *Bank* v. *Tele-
graph Company,* 79 O. S., 89, where the telegraph company
went onto the plaintiff's farm and cut the limbs and branches
of his trees.

Our conclusion therefore is that the allegations of the petition
and the evidence in support thereof clearly establish that the
vault in question constituted a nuisance, and that the personal
discomfort and injury to property complained of were conse-
quential and resulted from the existence of such nuisance on
defendant's property; this clearly characterizes the action as
one for damages for a nuisance.

It having been agreed to by counsel that the cause of action
set forth in the petition arose during the lifetime of William
·T. Buckner, and that the damages claimed were suffered during
his lifetime, the next question is whether the cause of action
abated by his death on April 30, 1912. This involves the con-
struction of the following sections of the General Code:

Section 11397 provides:

"Unless otherwise provided, no action or proceeding pending
in any court shall abate by the death of either or both of the
parties thereto, except actions for libel, slander, malicious prose-
cution, *for a nuisance,* or against a justice of the peace for mis-
conduct in office, which shall abate by the death of either
party."

Section 11235 provides:

"In addition to the causes which survive at· common law,
causes of action for mesne profits, *or injuries to the person or
property,* or for the deceit or fraud, also shall survive; and the
action may be brought notwithstanding the death of the party
entitled or liable thereto."

There is an apparent inconsistency of language in these two
sections in that by the terms of one we find that an action for
injury to property survives and may be brought notwithstanding

the death of the party liable thereto, while in the other, in equally positive terms, we find that an action for a nuisance, which may also be an action for injury to property, abates upon the death of the person liable thereto.

An examination of the early history of Section 11397 discloses that under the civil practice act of 1831 (Swan's Statutes, Ed. 1840), it was provided that among those actions which abate by the death of either party were "actions *on the case* for nuisance." When the civil code was adopted later on, the words "*on the case*" were dropped out for the reason that all common law actions relating to procedure were abolished—the nature of the action, however, remained the same.

Considerable light is shed upon this section by a decision of the Supreme Court of Ohio in 1889, *Cardington* v. *Fredericks,* 46 O. S., 442. This was an action against a municipality for personal injuries resulting from an unsafe and dangerous condition of a highway, and the court held that such an action was "for a nuisance," *i. e.,* for maintaining a nuisance from which private damage ensued within the meaning of the then Section 5144, Revised Statutes (now Section 11397, General Code), and that it abated upon the death of the party injured. In other words, while a cause of action for injuries to the person would ordinarily survive, yet where the injuries are caused by a nuisance they are held to abate by the death of either party.

In 1909 the Supreme Court affirmed without report a decision of the General Term of this court, involving a similar question. See *Cincinnati* v. *Darby, Admr.,* 5 N.P.(NS.), 216; 18 O. Dec., 253 (aff. 80 O. S., 733). In that case one Anna Williams sued the city of Cincinnati in damages for personal injuries resulting from the improper construction and maintenance of a sidewalk in a defective and dangerous condition. While the case was pending Anna Williams died and the suit was revived in the name of her administrator and a judgment recovered. The general term reversed the judgment and dismissed the petition on the ground that the action was one for a nuisance, which abated by her death. The Supreme Court affirmed this reversal. During the interval between the decisions in the Card-

ington and Darby cases certain changes had been made in the language of the two sections under consideration. The language of these statutes is substantially the same today as it was when the Darby case was decided. The opinion of the General Term in the Darby case is particularly instructive as it contains a very able review of the history of these two conflicting sections, and in commenting upon them in connection with the Cardington case, the court drew a very concise conclusion as follows:

"The language throughout the opinion implies a clear distinction between ordinary actions for injuries to persons or property, through negligence *per se,* and injuries to persons or property caused by a nuisance. The former were preserved by Section 5144, while the latter were positively abated by the same section."

Furthermore, the court held that Section 5144 (now 11397) was a limitation upon Section 4975 (now 11235). This conclusion was based upon the fact that under the original arrangement in the civil code these sections followed each other.

These authorities clearly establish that an action for personal injuries resulting from a nuisance is to be considered an action for a nuisance within the meaning of the statute. No distinction can be made between such an action and one for damages to property resulting from a nuisance.

The further suggestion has been urged that this action was not pending at the time of the death of William T. Buckner and therefore would not fall within the provisions of the statute. Such contention conflicts with the well defined spirit of the statute, for there could be no real difference between a cause of action in existence at the time of the death and an action which was pending, except as to the right to a revivor, which in turn would depend upon whether or not the cause or right of action was one which survived the death. It is not reasonable to suppose that the Legislature intended to give a right of action against the executor of an estate, which if it had been brought against the testator during his lifetime would

have abated at his death. This view is supported by the opinion of the general term in the Darby case, where the court says:

"It is not to be supposed that the Legislature intended to confer upon an executor, with respect to an action not brought by the testator, a power greater than if the suit had been actually brought by the testator during life."

Aside from that however, it appears that a similar suit had been brought in this court against the testator, William T. Buckner, shortly before his death. Instead of attempting to revive the action however, against his estate, the suit was dismissed and the case at bar was brought in its stead. In this view of the case from a legal standpoint it would be the same as an attempt to revive the original suit.

The court is therefore of the opinion that the cause of action in the present case is one for damages resulting from a nuisance, and as such abated with the death of William T. Buckner, defendant's testator. The court might add, however, that this conclusion has been reached with considerable reluctance in view of the hardship which it works on the plaintiff.

The motion for a new trial will therefore be overruled.